Bruce J. DALKA, Plaintiff-Respondent,

v.

WISCONSIN CENTRAL, LTD., a Wisconsin corporation, aka CN, Defendant-Appellant.

Court of Appeals

*No. 2011AP398. Submitted on briefs November 11, 2011.
—Decided January 18, 2012.*

2012 WI App 22

(Also reported in 811 N.W.2d 834.)

367

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Brian D. Baird* and *Joshua B. Cronin* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Randal W. LeNeave* of *Hunegs, LeNeave & Kvas, P.A.* of Minneapolis, MN, and *Jeffrey Gaines* of *Gaines Law Offices, S.C.* of Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. Wisconsin Central, Ltd. appeals from an order denying its motions after verdict entered after a jury found that Wisconsin Central's negligence pursuant to the Federal Employers' Liability Act ("FELA"), *see* 45 U.S.C. §§ 51–60 (2011), caused injury to Bruce J. Dalka in the course of his employment with Wisconsin Central. Wisconsin Central alleges that the trial court: (1) erroneously denied Wisconsin Central's motions for summary judgment, for a directed verdict, for judgment notwithstanding the verdict, and for a new trial when it improperly interpreted and applied the standards governing when a third-party criminal attack is foreseeable; (2) erroneously instructed the jury on when a third-party criminal attack is foreseeable; (3) erroneously permitted into evidence other-acts evidence on summary judgment and at trial; and (4) erroneously precluded Wisconsin Central from arguing that a third party was the sole cause of Dalka's injuries. For the reasons which follow, we affirm.

### BACKGROUND

¶ 2. On June 15, 2005, Dalka was at work at Wisconsin Central's railyard in North Fond du Lac,

Wisconsin, where he was employed as a conductor. The Fond du Lac railyard is about three and one-half miles long, and Lakeshore Drive, a public street, runs through the yard. A yardtower, located next to a parking lot where Wisconsin Central employees park, overlooked the yard. There was no parking attendant and no gate or access control to the parking lot or the railyard. The railyard operated twenty-four hours a day, seven days a week, and 365 days a year, except for Christmas.

¶ 3. Dalka was assigned to a switch crew whose other members included Eric Hau and Tom Flemming. Shortly after beginning their shift, the crew on which Dalka was working dropped off Flemming so that he could align track switches. Dalka and Hau remained on the locomotive and proceeded down a yard track to a switch that needed to be thrown. Dalka stepped off the locomotive to throw the switch when, out of the corner of his eye, he noticed a very fast-moving vehicle travelling northeast on Lakeshore Drive. Dalka watched as the vehicle turned off the public street into the railyard. In response, Dalka immediately radioed the yardmaster, Timothy Wallender, who was in the yardtower, to let him know there was a trespasser on the property. As the vehicle travelled through the railyard, Dalka remained on the ground monitoring its movement and reporting the information to Wallender.

¶ 4. While Dalka was monitoring the vehicle, he observed it coming straight at him and he moved to the left. The vehicle came back at Dalka and Dalka retreated towards the locomotive. Dalka jumped to the right and tripped on either a rail or a railroad tie. His left foot became stuck and his body went down hard. As Dalka fell, he observed the vehicle turn in front of the locomotive and crash into a huge pile of rail.

370

¶ 5. Dalka and Hau ran to the vehicle, pulled out the driver, placed him on the ground, and waited for police. The police arrived ten to twenty minutes after Dalka's initial call to the yardtower, and arrested the driver.

¶ 6. The driver of the vehicle was Alberto Fernandez. Fernandez was intoxicated and had recently stolen the vehicle from the Wisconsin Central parking lot. The vehicle belonged to Margaret Roberts, who worked for a cab company hired by Wisconsin Central to transport employees around the railyard.

¶ 7. After Fernandez's arrest, Dalka had pain in his left knee and leg and was taken to the hospital by ambulance where he was examined and x-rayed. While Dalka's knee symptoms eventually improved, he was left with back pain, which increased over time, necessitating five separate surgeries. Because of his back pain, Dalka has been unable to work as a conductor, but has been able to find other part-time and full-time employment for less compensation.

¶ 8. In June 2008, Dalka filed this action against Wisconsin Central, alleging that his injuries and damages "were caused by the carelessness and negligence of [Wisconsin Central] and/or its agents, in violation of the Federal Employers' Liability Act, 45 U.S.C. § 51." Wisconsin Central moved for summary judgment, arguing that Dalka's harm was not foreseeable under FELA. The trial court denied the motion, finding that sufficient material facts remained in dispute to send the action to trial.

¶ 9. The case was tried to a jury in November 2010. At the close of Dalka's case, Wisconsin Central moved for a directed verdict, but the trial court denied its motion.

¶ 10. The jury found Wisconsin Central causally negligent and awarded Dalka $300,000 in damages for past pain and suffering, $269,000 in damages for loss of past earnings, $175,000 in damages for future medical expenses, and $450,000 in damages for loss of future earnings. The jury awarded Dalka no damages for future pain and suffering. In total, the jury awarded Dalka $1,194,000.

¶ 11. Following the jury's verdict, Wisconsin Central filed a motion for judgment notwithstanding the verdict and for a new trial. Again, the trial court denied the motion. Wisconsin Central appeals.

¶ 12. Additional facts are included in the discussion section as necessary.

## DISCUSSION

¶ 13. Wisconsin Central argues that the trial court erroneously: (1) applied the standards governing foreseeable harm under FELA; (2) instructed the jury on foreseeable harm; (3) admitted other-acts evidence on summary judgment and at trial; and (4) prohibited Wisconsin Central from arguing that Fernandez was the sole cause of Dalka's injuries. We address each argument in turn.

## I. FELA's Foreseeable-Harm Standard

¶ 14. Wisconsin Central first submits that the trial court erred in denying each of its dispositive motions—for summary judgment, for a directed verdict, for judgment notwithstanding the verdict, and for a new trial. Each of Wisconsin Central's dispositive motions was based on its assertion that Dalka presented no evidence on which a reasonable jury could find that

372

Wisconsin Central could have foreseen the third-party criminal acts that resulted in Dalka's injuries. Wisconsin Central argues that, in ruling upon its motions, the trial court misapplied and misinterpreted FELA's foreseeable-harm standard. We disagree.

¶ 15. All of Wisconsin Central's contested dispositive motions rest upon the same theory: No genuine issue of material fact needed to be resolved by the factfinder because Dalka did not present evidence sufficient to support a finding of foreseeable harm pursuant to FELA; therefore, Wisconsin Central was entitled to judgment on the merits, entered in its favor, as a matter of law. Whether the trial court properly denied those motions raises a question of law that we review *de novo*.[1] *See Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 40 n.23, 241 Wis. 2d 804, 623 N.W.2d 751 (Both summary judgment and directed verdict rest on the same theory: No genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.); *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 978, 473 N.W.2d 506 (Ct. App. 1991) ("Whether facts fulfill a particular legal standard is a question of law to which we give *de novo* review.").

¶ 16. FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in

---

[1] Dalka asserts in his appellate brief that our review of the trial court's orders is *de novo*. Wisconsin Central does not attempt to set forth our standard of review in its brief-in-chief nor does it challenge Dalka's assertion that our review is *de novo*. Unrefuted arguments are deemed admitted. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

part from the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U.S.C. § 51. The statute "is grounded in common law concepts of negligence." *Vonderhaar v. Soo Line R.R. Co.*, 2001 WI App 77, ¶ 11, 242 Wis. 2d 746, 626 N.W.2d 314. However, "[t]he standard for liability under FELA is low, and the plaintiff's burden in a FELA action is 'significantly lighter than it would be in an ordinary negligence case.'" *Id.*, ¶ 5 (citations omitted).

¶ 17. Because of the relaxed liability standard under FELA, "FELA actions are commonly submitted to juries on 'evidence scarcely more substantial than pigeon bone broth.'" *Id.*, ¶ 6 (citation omitted). "'[T]he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any* part, *even the slightest,* in producing the injury or death for which damages are sought.'" *Burns v. Penn Cent. Co.*, 519 F.2d 512, 514 (2d Cir. 1975) (quoting *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)) (emphasis added).

¶ 18. "In order to establish negligence under FELA, a plaintiff must offer evidence on duty, breach, damages, foreseeability, and causation." *Vonderhaar*, 242 Wis. 2d 746, ¶ 12. Wisconsin Central only challenges the sufficiency of Dalka's evidence with respect to foreseeability.

¶ 19. FELA's relaxed liability standard, as applied to foreseeable harm, is aptly demonstrated by the United States Supreme Court's decision in *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108 (1963). In *Gallick*, the Court upheld a verdict against a railroad after a railroad crew foreman demonstrated that an unidentified bug bite he obtained near a stagnant pool

of water on the railroad's property led to the amputation of the foreman's legs. *Id.* at 109–10, 117–18; *see also Burns*, 519 F.2d at 514. The Court acknowledged that "reasonable foreseeability of harm is an essential ingredient" under FELA, *Gallick*, 372 U.S. at 117, but held that it was "satisfied in the present case by the jury's findings . . . of negligence in maintaining the filthy pool of water," *id.* at 117–18. The Court noted that "it [wa]s clear that the jury concluded that [the railroad] should have realized the increased likelihood of an insect[] biting [the railroad foreman] while he was working in the vicinity of the pool," *id.* at 119, based upon the jury's findings that the railroad foreman:

> was bitten by an insect; the insect bite caused illness or disease and led to [the foreman's] present physical condition; the stagnant pool [on railroad property] attracted bugs and vermin and was responsible for the insect bite and the injuries to [the foreman]; and [the railroad] knew that the accumulation of the pool of water would attract bugs and vermin to the area[,]

*id.* at 118–19. Thus, the railroad's maintenance of the stagnant pool and knowledge that it attracted bugs were enough to establish reasonable foreseeability under FELA. *Id.* at 117–18.

¶ 20. The Court in *Gallick* also rejected the railroad's argument that foreseeable harm required the foreman to prove that the railroad had notice of a prior similar incident. *Id.* at 121–22. Disregarding two jury findings that the railroad lacked prior notice of a similar incident at the pool in the past, the Court stated that proof of "similar incidents . . . in the past" was "far too narrow a concept of foreseeable harm to negative negligence under" FELA. *Id.* at 121. The Court "held that for a defendant to be liable for consequential damages [it] need not foresee the particular conse-

quences of [its] negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable." *Id.* at 120. Thus, *Gallick* makes clear that foreseeability under FELA does not require proof of prior similar incidents.

■

¶ 21. The relaxed foreseeable-harm standard under FELA applies even when the harm is caused by a third party's criminal conduct. *See Syverson v. Consolidated Rail Corp.*, 19 F.3d 824 (2d Cir. 1994); *Burns*, 519 F.2d 512. For example, in *Syverson*, the Second Circuit Court of Appeals applied the lessons of *Gallick* to a case involving the foreseeability of harm caused by a third-party criminal actor. In that case, a railroad dispatcher parked his car in a remote area of the railyard, known locally as "the weeds," to perform some paperwork and wait for the yardmaster. *Syverson*, 19 F.3d at 825. While in his car, the dispatcher was stabbed numerous times and bitten by an unprovoked stranger. *Id.*

¶ 22. The dispatcher filed a FELA claim against the railroad, alleging that the railroad knew that "the weeds" attracted vagrants and was aware of several criminal incidents involving these persons—chiefly incidents of theft, vandalism, and breaking into box cars—but failed to remove the vagrants from its property. *Id.* at 825, 827. The district court granted the railroad's motion for summary judgment on the grounds that the dispatcher's injuries by a third-party criminal actor were not foreseeable, concluding that

> even if [the railroad] knew that vagrants were congregating in and around its property, "knowledge of these facts could not have put [the railroad] on notice of the particular danger that one of its employees at the Yard might be attacked by an unknown and unprovoked

individual . . . . [A]t best, and as a matter of law, such facts could have only foretold the possible presence of a trespasser."

*Id.* at 825 (ellipses and third set of brackets in *Syverson*).

¶ 23. The Second Circuit Court of Appeals, noting that "the common-law negligence standards of foreseeability and causation normally applied in summary judgment are substantially diluted" under FELA, *id.*, applied *Gallick*'s relaxed foreseeable-harm standard and reversed the district court. The court concluded that the dispatcher's evidence of foreseeable harm, while slight, was sufficient to preserve his opportunity to present his case to a jury. *Syverson*, 19 F.3d at 825–28. The court noted that the dispatcher presented evidence that the railroad knew that "the weeds" attracted vagrants, that the railroad had been unresponsive to concerns that security was lax, and that there had been past criminal activity in the yard—including theft, vandalism, and breaking into box cars.[2] *Id.* at 827. The court expressly stated that the criminal nature of the acts did not prohibit a finding of foreseeability, stating that while:

---

[2] Wisconsin Central argues that there was evidence of a prior violent attack by a trespasser in *Syverson v. Consolidated Rail Corp.*, 19 F.3d 824 (2d Cir. 1994), thereby distinguishing *Syverson* from this case, citing to evidence that ten months prior to the dispatcher's attack in "the weeds," another employee confronting a trespasser stealing railroad property was "menaced" with a metal pipe. *See id.* at 827. We reject Wisconsin Central's argument on the grounds that there was no evidence in *Syverson* that the trespasser actually attacked the railroad employee and because the court in *Syverson* focused "chiefly" on the numerous non-violent prior crimes committed by trespassers, including theft, vandalism, and breaking into box cars. *See id.*

"the criminal nature of the act causing injury may well bear on the jury's assessment of the defendant's ability to foresee that injury of this type might result from its acts or omissions, a jury is not constrained to find that harm caused by a third party's unlawful conduct was not foreseeable."

*Id.* at 826–27 (citing *Burns*, 519 F.2d at 514); *see also Lillie v. Thompson*, 332 U.S. 459, 461–62 (1947).

¶ 24. Wisconsin Central argues that there is "[a] long line of cases decided under FELA" which establish that a third-party criminal act is *only* foreseeable in two narrowly defined instances: (1) "if the defendant's railyard is so fraught with danger that it can reasonably be said that the railroad is 'aware of conditions which create[] a *likelihood*' that a third-party criminal attack will cause injury to an employee," (citing *Lillie*, 332 U.S. at 461) (some emphasis omitted; brackets in brief); and (2) "where prior incidents of criminal activity, substantially similar to the subject incident, occurred at the railyard," (citing *Leef v. Burlington N. & Santa Fe Ry. Co.*, 49 P.3d 1196, 1198 (Colo. App. 2002)). However, in support of that proposition, Wisconsin Central primarily cites to only two cases: *Lillie*, a three-page United States Supreme Court per curiam opinion, *see id.*, 332 U.S. 459; and *Leef*, a Colorado Court of Appeals opinion, *see id.*, 49 P.3d 1196. Neither case persuades us to ignore *Gallick* and its progeny and create a higher standard of foreseeability for third-party criminal acts under FELA.

¶ 25. With regards to *Lillie*, we first note that *Lillie* predates both *Gallick* and *Syverson*. *See Lillie*, 332 U.S. 459 (decided in 1947); *Gallick*, 372 U.S. 108 (decided in 1963); *Syverson*, 19 F.3d 824 (decided in 1994). Second, *Lillie* was a per curium opinion, in which the holding was limited to addressing whether the

378

complaint sufficiently set forth a claim for relief under FELA. In its short three-page opinion, the Court did not discuss, much less elaborate on, FELA's negligence foreseeability standard, either generally or as applied to a third-party criminal act.

¶ 26. The complaint in *Lillie* alleged that a twenty-two-year-old telegraph operator, who worked alone in a one-room building in an isolated part of the railroad's yard, was attacked by a stranger with a piece of iron. *Id.*, 332 U.S. at 460–61. The telegraph operator's duties required her to open the door in a windowless room to trainmen who came to her building at irregular intervals throughout the night. *Id.* at 460–61. The only way she could see who was at the door was to open it. *Id.* at 461.

¶ 27. The telegraph operator sued the railroad for damages under FELA, and the district court dismissed her complaint for failure to state a claim. *Id.* at 460. The United States Supreme Court reversed, holding that the complaint was sufficient. *Id.* at 461–62. The Court observed that the complaint "alleged in effect that [the railroad] was aware of conditions which created a likelihood that a young woman performing the duties required of [the telegraph operator] would suffer just such an injury as was in fact inflicted upon her." *Id.* The Court's comments were case specific; its holding was simply that the complaint *in that case* alleged a likelihood of harm and that was enough to survive a motion to dismiss. *See id.* The Court found that the complaint alleged foreseeability by setting forth the telegraph operator's duties, to wit, the need to open the door without knowing who was on the other side, and the conditions of her employment, namely, working in an isolated and windowless building. Significantly, the complaint did not allege any prior similar incidents in

379

the past. Thus, contrary to Wisconsin Central's argument, *Lillie* imposes no greater foreseeability standard than *Gallick*.

¶ 28. We also reject Wisconsin Central's assertion that, pursuant to *Leef*, Dalka must produce evidence of substantially similar acts of criminal conduct, to wit, violent criminal conduct, to create a genuine issue of material fact regarding foreseeable harm. As we concluded above, the Court in *Gallick* specifically rejected the need to prove prior similar acts in a FELA negligence case and *Syverson* rejected any need to prove a prior criminal act with regard to a criminal attack from a third party. *See Gallick*, 372 U.S. at 120–21; *Syverson*, 19 F.3d at 826–27.

¶ 29. In *Leef*, a train conductor brought a FELA claim against a railroad after he was attacked by a trespasser who had boarded the train. *Id.*, 49 P.3d at 1197. The Colorado Court of Appeals concluded that no genuine issue of material fact existed concerning the foreseeability of the assault because, while the conductor produced evidence that trespassers were a problem on the train, he presented no evidence of previous *violent* attacks by trespassers at that location. *Id.* at 1199. In short, the Colorado Court of Appeals decision is not binding upon this court, and, in our opinion, is contrary to *Gallick* and *Syverson*.[3] *See Gallick*, 372 U.S. at 117–21 (exemplifying FELA's relaxed foreseeable-harm standard); *Syverson*, 19 F.3d at 827 (evidence of trespass and past criminal activity were sufficient to create a material issue of fact as to whether a violent

---

[3] We note that the majority in *Leef v. Burlington Northern & Santa Fe Railway Co.*, 49 P.3d 1196 (Colo. App. 2002), dismisses the applicability of *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108 (1963), without explanation. *See Leef*, 49 P.3d at 1198–99.

third-party criminal act was foreseeable). In other words, we agree with the dissent in *Leef*, which applied *Gallick* and concluded that the conductor had produced enough evidence to create a genuine issue of material fact as to the reasonable foreseeability of harm resulting from the third-party criminal actor. *See Leef*, 49 P.3d at 1199–1200 (Jones, J., dissenting).[4]

¶ 30. Here, Dalka, like the railroad employees in *Gallick* and *Syverson*, presented sufficient evidence, summarized below, to create a genuine issue of material fact on whether the harm was foreseeable pursuant to FELA's relaxed standard.

¶ 31. On motion for summary judgment, Dalka presented the deposition testimony of William Lamb, North Fond du Lac's chief of police, who testified that police had responded to several incidents of trespass at

---

[4] In support of its argument that Dalka was required to produce evidence of substantially similar *violent* criminal acts to create a genuine issue of material fact regarding foreseeability, Wisconsin Central also cites to *Thomas v. Consolidated Rail Corp.*, 971 F. Supp. 620, 622 (D. Mass. 1997), and *Hartel v. Long Island Railroad Co.*, 476 F.2d 462 (2d Cir. 1973). Wisconsin Central submits that *Thomas* and *Hartel* each require that evidence of an "ambient crime" is insufficient to establish foreseeable harm as a matter of law under FELA. We are unpersuaded. In *Thomas*, the Massachusetts district court concluded that evidence of an ambient crime was insufficient to establish a *breach of the duty of care* under FELA; the court was not addressing foreseeability. *See id.*, 971 F. Supp. at 622. In *Hartel*, the Second Circuit Court of Appeals did not find prior incidents of violent crimes to be sufficient to create a genuine issue of material fact regarding foreseeability because those prior crimes had not occurred *at the same location* as the injury at issue; the court did not address whether *any* prior crimes had been committed at the location where the injury had occurred. *See id.*, 476 F.2d at 464.

the railyard in the six-month period prior to Dalka's injuries, including calls regarding suspicious activity, suspicious vehicles parked in and around the yard, and reports of suspicious persons. Dalka also presented the deposition testimony of Donovan Heavener, a North Fond du Lac police officer, who testified that the railyard had a problem with trespassers, but that the railyard had not installed any security fencing to keep trespassers out. Dalka also submitted his own deposition testimony on summary judgment in which he testified that he regularly received calls from the yardmaster in the course of his employment informing him of unauthorized people in cars and to be on the lookout, and that he had also personally observed police handcuff trespassers in the railyard.

¶ 32. At trial, numerous Wisconsin Central employees, including Hau, Dalka, and David Sprankle (Wisconsin Central's chief of police for United States Operations) testified to either regularly seeing trespassers in the railyard or knowing that trespassers were regularly in the railyard. Wallender testified at trial that although there were cameras in the railyard, none of the cameras monitored the parking lot, and that security amounted to requiring employees to call the tower *after* they saw a trespasser by using radios provided by Wisconsin Central. Sprankle also testified that while fencing was provided and security measures were taken at other intermodal facilities and yards, those measures had not been taken at the North Fond du Lac facility.

¶ 33. Furthermore, Dalka presented evidence of Wisconsin Central's awareness of the trespasser problem in the form of written bulletins and brochures Wisconsin Central issued to employees. Both Wisconsin Central's "General Security Awareness" bulletin and its

382

"Dealing with [T]respassers" brochure stated that there are "no typical trespasser[s]" and trespassers "may be . . . preparing to commit a crime." The "Dealing with [T]respassers" brochure further noted that trespassers "may be sober or intoxicated and could also be emotionally or mentally distressed."

¶ 34. In sum, Dalka presented evidence at summary judgment and at trial that trespassers were a problem at the railyard, that Wisconsin Central was aware of the trespass problem, that the trespassers had committed crimes at the railyard, that Wisconsin Central knew trespassers could be intoxicated or mentally unstable, and that Wisconsin Central had not taken any proactive steps to prevent trespassers from entering the railyard. Those facts are sufficient to raise a genuine issue of fact regarding whether Dalka's injuries, resulting from the criminal act of a third-party trespasser, were foreseeable under FELA's relaxed standard.

¶ 35. We reject Wisconsin Central's argument that Dalka's evidence—specifically evidence of lax security and evidence of system-wide handouts—is inadmissible under the applicable legal standards.[5]

¶ 36. To begin, we reject Wisconsin Central's argument that evidence of lax security at the railyard was irrelevant to the foreseeability of harm, but rather was only relevant to whether Wisconsin Central met its duty of care. *See* Wis. Stat. § 904.01 (2009–10)[6] (defin-

---

[5] Wisconsin Central also argues that the trial court improperly considered Dalka's evidence of prior acts of trespass, which we address in section III.

[6] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

ing relevant evidence); *see also* Wis. Stat. § 904.02 (stating that relevant evidence is generally admissible). With regards to security, Dalka presented evidence demonstrating that Wisconsin Central took no action to prevent trespassers from entering the railyard, but rather relied solely on reactive measures *after* trespassers had entered the railyard, i.e., employees notifying the watchtower *after* observing trespassers and yardmaster calls to police *after* observing trespassers. While we agree that Wisconsin Central's security measures are relevant to whether Wisconsin Central met its duty of care, the lack of security fencing, gates, and other proactive measures to prohibit or discourage known trespassers from entering the railyard is *also* relevant to whether trespassing and the resulting consequences of such trespassing were foreseeable. Certainly, it was more likely that trespassers would enter into the railyard when there were no physical barriers or other measures preventing them from doing so.[7]

¶ 37. Wisconsin Central also argues that its handouts and bulletins touting its awareness of trespassers and the dangers they pose are irrelevant to foreseeable harm because the handouts:

> make every third-party criminal attack "automatically foreseeable," as any railroad would be aware of the general information about trespassers contained in these handouts. The question is not whether Wisconsin Central could foresee any type of trespassing at any

---

[7] In support of its argument that Dalka's evidence of lax security is irrelevant to foreseeable harm under FELA, Wisconsin Central cites to *McIntosh v. NationsBank*, 963 S.W.2d 545 (Tex. Ct. App. 1997), a Texas Court of Appeals case dealing with foreseeability pursuant to the common law. *McIntosh* is inapplicable to foreseeability under FELA's more relaxed standards, and therefore, we do not find it persuasive.

railyard, . . . but whether Wisconsin Central could reasonably foresee a violent, criminal attack on a railroad employee at the yard.

(Citation omitted.)

¶ 38. Contrary to Wisconsin Central's assertion, a railroad's admission that it is aware of a trespasser problem does not make every criminal act resulting from such trespass "automatically foreseeable." Rather an awareness of trespassers is one factor a factfinder can consider in determining whether a particular third-party criminal act is foreseeable. Here, the jury was properly permitted to consider the railroad's knowledge of trespassers, *in addition to* the types of crimes committed by those trespassers in the past, the likelihood of a trespasser given the railroad's failure to actively prohibit trespass, the railroad's procedures for removing trespassers and preventing them from doing harm after being seen in the railyard, and Fernandez's actions while trespassing in the railyard. *See Syverson*, 19 F.3d at 826–27 (" 'the criminal nature of the act causing injury may well bear on the jury's assessment of the defendant's ability to foresee that injury of this type might result from its acts or omissions' ") (citing *Burns*, 519 F.2d at 514).

¶ 39. Consequently, we affirm the trial court because, under FELA's relaxed foreseeable-harm standard, as exemplified by *Gallick*, Dalka presented enough evidence to create a genuine issue of material fact regarding the foreseeability of harm.

## II. Jury Instructions

¶ 40. Wisconsin Central also contends that the trial court erroneously instructed the jury on the law of

385

foreseeability and should have issued a separate verdict question on foreseeability. More specifically, it contends that the jury instructions were erroneous because they: (1) "failed to properly instruct the jury on the two limited circumstances in which a third-party criminal attack is foreseeable under the FELA"; (2) "instructed the jury only to 'consider' the issue of foreseeability"; and (3) were vague. We disagree.

¶ 41. "A [trial] court has wide discretion when instructing the jury[,] and we affirm if 'the overall meaning communicated by the instruction as a whole was a correct statement of the law, and the instruction comported with the facts of the case.'" *Water Quality Store, LLC v. Dynasty Spas, Inc.*, 2010 WI App 112, ¶ 41, 328 Wis. 2d 717, 789 N.W.2d 595 (citation omitted). Even if the trial court committed an error when instructing the jury, "we do not reverse unless the error affects the substantial rights of the parties." *Id.* To affect a substantial right of the parties "means that there is a reasonable possibility that the error contributed to the outcome of the action, or, phrased differently, there is a reasonable possibility that the outcome would have been different without the error." *Id.*

¶ 42. Regarding foreseeable harm, the trial court instructed the jury as follows:

The definition of negligence under FELA requires the Defendant to guard against those dangers of which it knew or by the exercise of due care should have known. In other words, Defendant's duty is measured by what a reasonably prudent person would anticipate or foresee resulting from particular circumstances.

The Defendant has several nondelegable duties under FELA. One of the Defendant's duty [sic] is to use

ordinary care under the circumstances in furnishing Plaintiff with a reasonably safe place in which to work. It is also Defendant's continuing duty to use ordinary care under the circumstances to maintain and keep such place of work in a reasonably safe condition. These duties do not mean that the Defendant is a guarantor of the safety of the place to work. The extent of the Defendant's duty is to exercise ordinary care under circumstances to see that the place in which the employee works is reasonably safe under the circumstances shown by evidence.

In determining whether reasonable care has been exercised, you will consider whether Defendant ought to have foreseen under the attended circumstances that the natural and probable consequence of this act or omission to act would have led to some injury. It is not necessary that the Defendant have anticipated the very incident which resulted from his wrongdoing. It is sufficient that the incident was within the realm of foreseeability that some harm might occur thereby. The test is the probable and foreseeable consequences that may reasonably be anticipated from the performance or the failure to perform a particular act.

If an ordinary person under similar circumstances and by the use of ordinary care could have foreseen the result that, for example, that some injury or damage would probably result and either would not have acted, or if he or she did act, would have taken precaution to avoid the result, then the performance of the act or the failure to take such precautions would constitute negligence.

¶ 43. Wisconsin Central first argues that the jury instructions erroneously stated the law because they did not "instruct the jury on the two limited circumstances in which a third-party criminal attack is foreseeable under FELA," to wit, the two limited circum-

stances that Wisconsin Central previously argued are mandated by *Lillie* and *Leef*. As we set forth in detail in section I above, foreseeable harm under FELA is not so limited, even when dealing with the foreseeability of a third-party criminal attack. As such, the trial court did not erroneously exercise its discretion in failing to so instruct the jury.

¶ 44. Next, Wisconsin Central argues that the jury instructions were erroneous because they only instruct the jury to "consider" foreseeable harm, stating: "In determining whether reasonable care has been exercised, you will *consider* whether Defendant ought to have foreseen under the attended circumstances that the natural and probable consequence of this act or omission to act would have led to some injury." (Emphasis added.) Because foreseeable harm is a necessary element under FELA, Wisconsin Central argues that the jury instruction was "tantamount to relegating the question of foreseeability to just another consideration among many." *See Gallick*, 372 U.S. at 117 ("[R]easonable foreseeability of harm is an essential ingredient of [FELA] negligence.").

¶ 45. In so arguing, Wisconsin Central fails to look at the jury instructions as a whole. *See Water Quality Store*, 328 Wis. 2d 717, ¶ 41. Looking at the trial court's instructions on foreseeable harm as a whole, the instructions unambiguously informed the jury that foreseeable harm was a necessary element that the jury must find to conclude Wisconsin Central was negligent under FELA. The instructions clearly stated that a finding "of negligence under FELA *requires* the Defendant to guard against those dangers of which it knew or by the exercise of due care should have known," (emphasis added), and then continued on for

388

four paragraphs explaining the parameters of foreseeable harm, emphasizing the importance of the jury's finding in that regard. The court's offhanded use of the word "consider" did not change the overall tone and mandate of the court's instructions on foreseeable harm.

¶ 46. Lastly, Wisconsin Central submits that the jury instructions were erroneously vague regarding "the particular circumstances the jury may consider in assessing foreseeability." Wisconsin Central contends that "[f]oreseeability must be analyzed based on the circumstances that existed just prior to . . . [the] attack" and that the trial court's instruction—that the jury should consider whether the harm was foreseeable under "the attended circumstances"— invited the jury to improperly use hindsight.

¶ 47. Again, Wisconsin Central fails to look at the jury instructions as a whole. *See id.* Wisconsin Central argues that the following sentence from the jury instructions was vague: "In determining whether reasonable care has been exercised, you will consider whether Defendant ought to have foreseen under the attended circumstances that the natural and probable consequence of this act or omission to act would have led to some injury." Even assuming that Wisconsin Central is correct, and the sentence is vague, the sentence immediately preceding the challenged sentence clears up any confusion: "It is not necessary that the Defendant have *anticipated* the very incident which resulted from his wrongdoing." (Emphasis added.) The word "anticipate," by definition, means "to consider in advance," thereby eliminating any alleged ambiguity and any suggestion that the jury could use hindsight in determining foreseeable harm. *See* Webster's Third New International Dictionary 94 (unabr. 1993).

¶ 48. Because Wisconsin Central has not alleged any error in the jury instructions that affected its substantial rights, or otherwise convinced us that there was an error that would have contributed to a different outcome, we conclude that the trial court did not erroneously exercise its discretion in instructing the jury on foreseeable harm. *See Water Quality Store*, 328 Wis. 2d 717, ¶ 41.

## III. Other-Acts Evidence

¶ 49. Next, Wisconsin Central argues that the trial court erroneously exercised its discretion when it: (1) considered other-acts evidence during summary judgment; and (2) permitted other-acts evidence to be admitted during trial. *See* Wis. Stat. § 904.04(2). However, Wisconsin Central does not specifically identify what evidence the trial court impermissibly considered on summary judgment and expressly states that the following trial excerpts are only meant to "highlight the type" of other-acts evidence the trial court impermissibly admitted at trial:

- Hau's testimony that prior to June 2005 there were a lot of trespassers at the railyard; that "it is kind of a place that breeds trespassers"; and that "[w]e see them on foot[;] [w]e see them by vehicle. I have seen them — actually, we have had vagrants that come in on cars and get off, you know, walk around the yard."

- Roberts's testimony that in the fifteen years she worked at the railyard she has seen and heard trespassers on the property; that sometimes they are on foot and sometimes they are in vehicles; and that sometimes they have been drinking and "they

didn't know where the road — they thought that this path might be a road and it wasn't."

- Frank Burg's testimony (Dalka's safety expert) that Wisconsin Central knew that there were trespassers on the property and that there had been trespassers every month.

- Dalka's testimony that there had been trespassers on the property since the beginning of his employment and that trespassers "walk across, through the yard, climb on trains, on foot, vehicles."

Because Wisconsin Central does not specifically identify which pieces of evidence the trial court allegedly erroneously admitted, we only address the broad question of whether the trial court erroneously exercised its discretion in admitting evidence of prior non-violent trespass generally.[8]

¶ 50. Wisconsin Central contends that because the prior incidents of trespass were not "substantially similar" to the incident of trespass committed by Fernandez—to wit, the prior incidents of trespass did not involve stolen vehicles, stolen vehicles being driven at a high rate of speed, stolen vehicles being driven directly at an employee, or stolen vehicles being driven around signal gates to come into the railyard—the evidence of other incidents of trespass is inadmissible pursuant to WIS. STAT. § 904.04(2). Because proof of

---

[8] Wisconsin Central also argues that the trial court erred in not addressing each piece of other-acts evidence individually on its own merits. However, because Wisconsin Central does not set forth each piece of evidence it asserts that the trial court should have individually addressed, we will not address the argument. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (We will not address undeveloped arguments.).

knowledge is a permissible basis for other-acts evidence under § 904.04(2), and because the other-acts evidence here was relevant to propositions of consequence, namely knowledge and foreseeability, we conclude that the trial court properly exercised its discretion in admitting the evidence.

¶ 51. Whether to admit or exclude evidence is a decision left to the trial court's discretion. *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. We will uphold the trial court's decision to admit or exclude evidence if the trial "court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Id.* If the trial court failed to "adequately explain its reasoning, we may search the record to determine if it supports the court's discretionary decision." *Countrywide Home Loans, Inc. v. Schmidt*, 2007 WI App 243, ¶ 22, 306 Wis. 2d 200, 742 N.W.2d 901.

¶ 52. WISCONSIN STAT. § 904.04(2) prohibits the admission of "evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show that the person acted in conformity therewith." However, such evidence is admissible "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

¶ 53. When considering the admissibility of other-acts evidence pursuant to WIS. STAT. § 904.04(2), the trial court is to apply a three-part test: "(1) Is the other acts evidence offered for an acceptable purpose under . . . § ... 904.04(2) . . .?"; "(2) Is the other acts evidence relevant . . .?"; and "(3) Is the probative value of the other acts evidence substantially outweighed by

392

the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence?" *State v. Sullivan*, 216 Wis. 2d 768, 772–73, 576 N.W.2d 30 (1998).

¶ 54. Wisconsin Central does not contest Dalka's assertion that the other-acts evidence was offered to show Wisconsin Central's knowledge that trespassing was a problem, an acceptable purpose pursuant to WIS. STAT. § 904.04(2). Rather, Wisconsin Central focuses its argument on the second step of the other-acts admissibility test: Whether the evidence was relevant. Consequently, we turn our attention to step two.

¶ 55. Step two requires the trial court to determine whether the other-acts evidence is relevant for the proffered purpose. *Sullivan*, 216 Wis. 2d at 772. When determining relevance, the trial court is to consider: (1) "whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action"; and (2) "whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence." *Id.*

¶ 56. "[W]hether the [other-acts] evidence relates to a fact or proposition that is of consequence to the determination of the action" is dependent upon the substantive law "and the ultimate facts and links in the chain of inferences that are of consequence to the case." *Id.* at 785–86. The trial court concluded that Wisconsin Central's knowledge of prior trespassers relates to whether Wisconsin Central should have foreseen Fernandez's trespass and taken steps to prevent it. Because duty, causation, and foreseeability are all ele-

ments of negligence under FELA, the evidence of prior trespassers is "of consequence to the case." *See id.* at 772; *see also Vonderhaar*, 242 Wis. 2d 746, ¶ 12 ("In order to establish negligence under FELA, a plaintiff must offer evidence on duty, breach, damages, foreseeability, and causation."). As such, the trial court properly exercised its discretion.

■

¶ 57. "[W]hether the evidence has probative value," *Sullivan*, 216 Wis. 2d at 772, requires the trial court to determine "whether the consequential fact or proposition for which the evidence was offered becomes more or less probable than it would be without the evidence," *State v. Payano*, 2009 WI 86, ¶ 70, 320 Wis. 2d 348, 768 N.W.2d 832. This " 'is a common sense determination based less on legal precedent than life experiences,' " *id.* (citing 7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 404.6 at 181 (3d ed. 2011)). "Although some . . . cases focus on the other incident's nearness in time, place and circumstances to the . . . proposition sought to be proved, similarity and nearness are not talismans. Sometimes dissimilar events will be relevant to one another." *See id.* (citing BLINKA, *supra*, § 404.6 at 181–82) (quotation marks and internal citations omitted).

¶ 58. Here, the trial court determined that the evidence of prior trespassers and Wisconsin Central's knowledge of those trespassers made it more probable that Wisconsin Central should have foreseen the trespass that occurred in this case and put Wisconsin Central on notice that perhaps additional security was necessary. In so finding, the trial court properly exercised its discretion.

¶ 59. Wisconsin Central argues that the trial court erred in concluding that the evidence of past

trespassers had probative value because *Sullivan* allegedly prohibits the admission of other-acts evidence unless it is "substantial[ly] similar in time, place and circumstance to the subject incident." (Citing *Sullivan*, 216 Wis. 2d at 768.)[9] As we set forth above, "similarity ... [is] not [a] talisman[]. Sometimes dissimilar events will be relevant to one another." *See Payano*, 320 Wis. 2d 348, ¶ 70 (citations, quotation marks, and brackets omitted). Here, although the prior incidents of trespass are not identical to the one in this case, they are similar enough to be probative of whether Wisconsin Central should have had foreseen Fernandez's trespass and its consequences and whether Wisconsin Central should have taken proactive steps to prevent the trespass.

¶ 60. Wisconsin Central does not address the third step of the other-acts admissibility test, requiring the evidence to be omitted even if it is offered for an acceptable purpose and is relevant because "the probative value of the other acts evidence [is] substantially outweighed by the danger of unfair prejudice." *See Sullivan*, 216 Wis. 2d at 772–73. As such, we deem that step admitted. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (Unrefuted arguments are deemed admitted.). Regardless, we conclude that the danger of unfair

---

[9] Wisconsin Central's cite to *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), upon which it bases its entire argument that the trial court erroneously exercised its discretion in admitting the other-acts evidence, is to a headnote which sets forth the three steps the court must consider when determining the admissibility of other-acts evidence. There is no mention of a substantially-similar requirement either in the headnote or elsewhere in *Sullivan*. *See id.* at 768.

prejudice in this case is extremely low and that the evidence of past trespassers easily passes muster.

## IV. Preclusion of Argument that Fernandez was the Sole Cause of Injury

¶ 61. Next, Wisconsin Central submits that the trial court erroneously exercised its discretion when it prohibited Wisconsin Central from arguing that Fernandez was the sole cause of Dalka's injuries and excluded mention of Fernandez on the special verdict. Wisconsin Central contends that the trial court should have permitted the argument because Fernandez's conduct is relevant to the issue of causation under FELA and because the trial court improperly relied on *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135 (2003).

¶ 62. We review both a trial court's evidentiary rulings and its submission of issues to the jury for an erroneous exercise of discretion. *See Martindale*, 246 Wis. 2d 67, ¶ 28; *see also Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 602, 541 N.W.2d 173 (Ct. App. 1995). As set forth above, we uphold a trial court's discretionary decisions so long as the trial "court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *See Martindale*, 246 Wis. 2d 67, ¶ 28. If the trial court failed to "adequately explain its reasoning, we may search the record to determine if it supports the court's discretionary decision." *Countrywide Home Loans*, 306 Wis. 2d 200, ¶ 22. Moreover, we shall not reverse a trial court's submission of a special verdict to the jury "unless the question does

not fairly represent the material issue of fact to the jury." *Runjo,* 197 Wis. 2d at 602.

¶ 63. Because the record supports the trial court's decision to prohibit Wisconsin Central from arguing that Fernandez was the sole cause of Dalka's injuries and because the special verdict in this case fairly represented the issue of causation, we affirm.

¶ 64. In order to establish causation pursuant to FELA, a plaintiff need only show "that employer negligence played *any* part, *even the slightest,* in producing the injury . . . for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes." *Rogers,* 352 U.S. at 506 (footnote omitted; emphasis added).

¶ 65. Here, the first question on the special verdict asked the jury the following question: "With respect to the June 16, 2005 incident, was the defendant Wisconsin Central negligent?" The jury answered the question "yes." Next, the special verdict asked the jury: "Was the defendant Wisconsin Central's negligence a cause of injury to Bruce J. Dalka?" Again, the jury answered the question "yes." Whether Wisconsin Central's negligence caused Dalka's injuries is a question that the jury could answer without hearing argument that Fernandez was the sole cause of Dalka's injuries. *Cf. Rogers,* 352 U.S. at 506 ("It does not matter that . . . the jury may also . . . attribute the result to other causes."). The jury was aware of Fernandez's role in the events that resulted in Dalka's injuries. The evidence at trial informed the jury that Fernandez was intoxicated, stole a vehicle from the employee parking lot, and drove it erratically through the railyard. Furthermore, Dalka testified at trial that he believed

Fernandez was driving the vehicle at him when he jumped out of the way and injured himself. The jury could certainly take that evidence into account when determining whether Wisconsin Central's negligence played any part in Dalka's injury.

¶ 66. Consequently, because the evidence in the record supports the trial court's ruling and the special verdict fairly represented the issue of causation to the jury, we affirm the trial court. *See Countrywide Home Loans*, 306 Wis. 2d 200, ¶ 22; *Runjo*, 197 Wis. 2d at 602.[10]

*By the Court.*—Order affirmed.

[10] Because we conclude that the record supports the trial court's ruling and that the special verdict fairly represented the issue of causation to the jury, we need not address the applicability of *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135 (2003). *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (The court of appeals "decide[s] cases on the narrowest possible grounds.").