COURT OF APPEALS
DECISION
DATED AND FILED

November 25, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1655-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2014CF898

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

STEVEN M. ZELICH,

DEFENDANT-APPELLANT.

APPEAL from an order and a judgment of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Order reversed and cause remanded with directions*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Steven M. Zelich appeals from a judgment of conviction and an order of the circuit court denying his postconviction motion seeking plea withdrawal on the basis of ineffective assistance of counsel. He contends the circuit court erred in denying him a full evidentiary hearing on his claim. We agree and thus reverse and remand.[1]

## Background

¶2 According to the criminal complaint, on June 5, 2014, authorities discovered two suitcases along a road in the Town of Geneva. One of the suitcases contained the body of Julie Gerhard and the other contained the body of Lisa Shepard.[2]

¶3 When questioned, Zelich admitted to law enforcement that he had met Gerhard online in 2012 and in person in late 2012 or early 2013, and that he took her to a hotel in Kenosha County, blindfolded her, handcuffed her behind her back, put a ball gag device in her mouth, and engaged in consensual "breath play," specifically, using a rope tied around her neck to restrict her breathing and choke her. While choking her, Zelich lost control and caused Gerhard's death. Zelich placed Gerhard's body in a suitcase, transported it back to his apartment in West Allis, and put it in his refrigerator.

¶4 Zelich also admitted to law enforcement that he had met Laura Shepard online and traveled to Rochester, Minnesota, to meet her in

---

[1] While Zelich appeals from both a judgment and an order, we address only the order because we remand for a continuation of the postconviction hearing.

[2] We use fictitious names to aid in protecting the identity of the deceased victims.

2

November 2013. He went to a motel with Shepard, where he engaged in breath play with her, causing her death. He put Shepard's body in a suitcase, transported it back to West Allis, and hid it in the trunk of his vehicle. He later put Gerhard's body back into a suitcase and placed it in the trunk of his vehicle, where he kept it and the suitcase with Shepard's body for some time until he eventually left the bodies in the suitcases alongside the road in June 2014. When law enforcement found Shepard's body, it had "a rope wrapped around her neck and … a sexual ball gag strapped into her mouth."

¶5 In connection with Gerhard's death, Zelich was charged in Kenosha County with hiding a corpse and first-degree intentional homicide while using a dangerous weapon. The State brought a motion to admit at trial other-acts evidence, specifically, evidence related to Shepard's death. The State argued that the details of Shepard's death were being offered for the purpose of proving Zelich's intent to kill Gerhard, as well as to demonstrate the absence of mistake or accident in relation to her death. It also contended that the facts of Gerhard's and Shepard's cases were "inextricably intertwined" because pictures of the two suitcases had been taken together, Zelich had been questioned about both cases during his interviews with law enforcement, and there otherwise would be gaps in the State's presentation of its evidence as its investigation began with the disappearance of Shepard.

¶6 The circuit court denied the State's motion, concluding that because Shepard's death occurred after Gerhard's, it was not relevant to Zelich's intent to kill Gerhard. The court further concluded that allowing evidence of Shepard's death would be unduly prejudicial.

3

¶7      The State moved for reconsideration, arguing that subsequent acts are admissible as other-acts evidence and that "[t]he probative value of the [Shepard] death other acts evidence is relevant evidence in refuting the defendant's claim of accident or proving improbability of his innocent intent." (Emphasis omitted).  The circuit court denied this motion as well, stating that the details of Shepard's death were not relevant to whether Zelich intended Gerhard's death and that evidence of Shepard's death would be prejudicial and lead the jury to speculate that because Zelich had caused Shepard's death, "he probably intended" Gerhard's.

¶8      Months later, the State again moved for the admission of other-acts evidence related to the death of Shepard.  It again argued that the facts of Gerhard's and Shepard's cases were "inextricably intertwined" because its investigation into Gerhard's death began with the investigation into Zelich's involvement in Shepard's disappearance and thus without the evidence related to Shepard's death, the State's presentation of the evidence related to Gerhard would contain gaps.  The State also asserted that the fact that Zelich kept the bodies for so long indicated that he viewed them as "prized possessions" and thus supported the State's argument that he killed Gerhard intentionally.

¶9      This time the circuit court granted the State's motion, holding that the State would be permitted to present the other-acts evidence for the purpose of showing that Zelich "had a homicidal purpose when he first made contact" with Gerhard.  The court concluded that the Shepard evidence was relevant to "purpose, plan, modus operandi because of its similarity to conduct attributed to" Zelich in both cases.  Three weeks later, Zelich pled to an amended charge of first-degree reckless homicide, using a dangerous weapon, and hiding a corpse.

¶10    Following his sentencing, Zelich filed a motion for postconviction relief, alleging ineffective assistance of counsel. Specifically, he claimed, and claims on appeal, that before he entered his pleas, his trial counsel incorrectly, and deficiently, informed him that his right to challenge the circuit court's other-acts ruling would be preserved for appeal even if he pled guilty. He further alleged that had he not received such incorrect advice, he would not have pled guilty, but would have instead insisted on going to trial. Zelich also specifically alleged that: (1) from the initial charging in the case he had wanted to take the case to trial because he believed he had a "good defense" "because he and [Gerhard] were two consenting adults engaging in inherently dangerous behavior that accidentally resulted in her death"; (2) his desire to take the case to trial is evidenced by his rejection of the state's initial plea offer; (3) "[w]hen the State filed [its] other acts motion he was concerned about the prejudicial effect of [the Shepard] evidence but was encouraged when the court denied the State's motion the first two times"; (4) "[a]fter the court granted the State's other acts motion, he was concerned because he believed the evidence to be prejudicial and he did not think he could receive a fair trial if that evidence was admitted"; (5) "[h]e remained committed to trial in this case until the court ruled that the State could use the other acts evidence" and following that ruling he considered taking a plea deal; (6) he believed the court's other-acts ruling was erroneous in that the Shepard evidence was "too prejudicial" and he "wanted to challenge [that ruling] on appeal" and "preserve his right" to do so; (7) his "trial attorneys told him that if he pled guilty he would still be able to challenge the court's decision on the other acts motion on appeal"; (8) "[h]e did not believe he could overcome [the other-acts] evidence at trial so he pled guilty hoping to preserve his right to appeal that issue"; and (9) "[h]e believed that his guilty plea had preserved the issue" because his trial

counsel told him that was the case. Zelich requested an evidentiary hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶11 At the hearing on the postconviction motion, trial counsel for Zelich testified that although he did not specifically and directly inform Zelich that Zelich would not be able to appeal the other-acts ruling if he entered a plea, the discussion counsel and co-counsel had with Zelich essentially conveyed to him that he "needed to assume" that he would not be able to appeal that ruling if he pled. Trial counsel also provided testimony indicating that the circuit court's ruling on the other-acts motion did not appear to be critical to Zelich in his decision whether or not to plead. On redirect examination, postconviction counsel asked trial counsel: "Would it be fair to say that the advice you gave Mr. Zelich on [whether the other-acts ruling was preserved for appeal] boils down to[,] he may have been able to appeal the issue?" Before trial counsel could answer, the court interrupted the proceedings and ended the evidentiary portion of the hearing, thus precluding Zelich from securing additional evidence from trial counsel or testifying on his own behalf.

¶12 The circuit court stopped taking evidence because it concluded that instead of doing so, "we ought to start … from the standpoint of whether my [other-acts-evidentiary] ruling was erroneous because if it wasn't, this is a no harm, no foul deal.… If I … was correct in the ruling, then it's irrelevant what advice he may have given because it [would have been] unappealable." The court added: "[I]f we examine it as if there were an appeal and he loses, he got exactly what he bargained for regardless of what advice he may have been given." The court stated, "I think maybe we ought to shift our focus at this point to whether there could be a successful appeal brought on the ruling. Not on the question of the advice; on the ruling."

¶13    Despite counsel for both Zelich and the State encouraging the circuit court to continue taking evidence at the *Machner* hearing, the court ended the evidentiary portion of the hearing and proceeded to examine Zelich's postconviction motion "exclusively … from the viewpoint of whether Mr. Zelich got what he asked [for], which is the ability to have a look-see as to whether he could successfully appeal my ruling."   The court ultimately denied Zelich's postconviction motion, determining that its final ruling on the other-acts motion was correct and "that regardless of any advice or possible omission by the defendant's trial attorney with respect to the defendant's ability to appeal the evidentiary ruling of this court following a guilty plea, any appeal of this court's ruling on the admission of other-acts evidence would have been unsuccessful." Zelich appeals.

## *Discussion*

¶14    Zelich claims the circuit court erred in precluding him from presenting additional evidence at the postconviction hearing on the question of whether he is entitled to withdraw his plea.  We agree.

¶15    A defendant is entitled to a postconviction evidentiary hearing, a *Machner* hearing, if he/she alleges "sufficient material facts that, if true, would entitle the defendant to relief."  *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433.  Whether he or she has alleged such facts is a question of law that we review de novo.  *Id.*, ¶9.   Here, we conclude that Zelich's postconviction motion made sufficient allegations that, if proven true, would establish ineffective assistance of counsel and entitle him to withdraw his plea.

¶16    To withdraw a plea following sentencing, a defendant bears the burden of showing "by clear and convincing evidence that a refusal to allow

withdrawal of the plea would result in manifest injustice." ***State v. Dillard***, 2014 WI 123, ¶83, 358 Wis. 2d 543, 859 N.W.2d 44. Establishing that defendant's counsel provided ineffective assistance is one way to demonstrate a manifest injustice. ***Id.***, ¶84.

¶17 Ineffective assistance of counsel requires proof that counsel's performance was deficient and that the deficient performance prejudiced the defendant. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. ***State v. Thiel***, 2003 WI 111, ¶¶18-19, 264 Wis. 2d 571, 665 N.W.2d 305. To prove prejudice in the context of a plea, such as in this case, a defendant must show a reasonable probability that absent counsel's deficient performance, the defendant "would not have pleaded guilty and would have insisted on going to trial." *See* ***Hill v. Lockhart***, 474 U.S. 52, 59 (1985); ***State v. Cooper***, 2019 WI 73, ¶32, 387 Wis. 2d 439, 929 N.W.2d 192.

¶18 In this case, Zelich alleged in his postconviction motion that his trial counsel performed deficiently by advising him that even if he pled he would be able to challenge the circuit court's other-acts ruling on appeal. While the testimony that trial counsel did provide at the truncated ***Machner*** hearing suggested counsel may not have advised Zelich in the deficient manner Zelich alleges, Zelich was not permitted to finish questioning counsel on this point. Continued questioning, had the court permitted it, may have supported Zelich's position that counsel performed deficiently. Moreover, and critically, Zelich himself was not permitted to testify, and his testimony would obviously be crucial. If he testified consistent with the allegations of his motion, his testimony would appear to be in conflict with that of his counsel, and the court would have to make

a credibility determination and ultimately a factual finding as to the specific advice counsel provided him with regard to whether he would be able to appeal the other-acts ruling if he pled. If counsel in fact advised Zelich that he would be able to appeal the other-acts ruling even if he pled, such advice would be at odds with established case law holding that upon a plea a defendant waives the opportunity to challenge an other-acts ruling. *See State v. Nelson*, 108 Wis. 2d 698, 701, 324 N.W.2d 292 (Ct. App. 1982) (holding that with a plea, a defendant "waive[s] his [or her] right to appeal the trial court's ruling on the admissibility of other crimes evidence"); *see also State v. Riekkoff*, 112 Wis. 2d 119, 123-25, 332 N.W.2d 744 (1983).

¶19 On the question of prejudice, established case law holds that in the context of a guilty plea the question is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Cooper*, 387 Wis. 2d 439, ¶32.

> When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial "would have been different" than the result of the plea bargain….
>
> We instead consider whether the defendant was prejudiced by the "denial of the entire judicial proceeding … to which he had a right."

*Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). In determining whether a defendant would have pled guilty, we "focus[] on a defendant's decision-making, which may not turn solely on the likelihood of conviction after trial." *Id.* at 1966.

9

We ask "what an individual defendant would have done," *id.* at 1967, recognizing that when "the respective consequences of a conviction after trial and by plea … are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive," *id.* at 1966 (citation omitted). We look at "the defendant's motivation" and "state of mind" related to his decision to enter the plea, *see Dillard*, 358 Wis. 2d 543, ¶¶67, 102, and whether he was "prevented from making a reasoned decision whether to proceed to trial or plead," *id.*, ¶69.

¶20    In this case then, the question on prejudice becomes:  Assuming counsel deficiently represented Zelich in relation to advising him regarding his ability to appeal the circuit court's other-acts ruling upon a plea, is there "a *reasonable probability* that, but for counsel's errors, [Zelich] would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59 (emphasis added). Had Zelich been permitted to testify at the *Machner* hearing, we must assume at this point that he would have testified consistently with his postconviction motion. That testimony would then be that (1) from the initial charging in the case he had wanted to take the case to trial as he believed he had a "good defense" "because he and [Gerhard] were two consenting adults engaging in inherently dangerous behavior that accidentally resulted in her death"; (2) this is evidenced by his rejection of the State's initial plea offer;  (3) "[w]hen the State filed [its] other acts motion he was concerned about the prejudicial effect of such evidence but was encouraged when the court denied the State's motion the first two times"; (4) "[a]fter the court granted the State's other acts motion, he was concerned because he believed the evidence to be prejudicial and he did not think he could receive a fair trial if that evidence was admitted"; (5) "[h]e remained committed to trial in this case until the court ruled that the State could use the other acts evidence" and following that ruling he considered taking a plea deal;

(6) he believed the court's other-acts ruling was erroneous in that the Shepard evidence was "too prejudicial" and he "wanted to challenge [that ruling] on appeal" and "preserve his right" to do so; (7) his "trial attorneys told him that if he pled guilty he would still be able to challenge the court's decision on the other acts motion on appeal"; and (8) "[h]e did not believe he could overcome [the other-acts] evidence at trial so he pled guilty hoping to preserve his right to appeal that issue" and "[h]e believed that his guilty plea had preserved the issue" because his trial counsel told him that was the case.

¶21     Additionally, Zelich was obviously aware at the time he entered his plea that he was fifty-four years old and also had a criminal charge pending against him in Minnesota related to the death of Shepard.  By pleading in this case, he was guaranteed to be sentenced by a court with knowledge that he had killed two women in a ghastly manner.  The charges he pled to, first-degree reckless homicide while using a dangerous weapon and hiding a corpse, carried with them a maximum penalty of seventy-five years of imprisonment.  Zelich makes the point in his briefing before us that "given his age of 54 years, Mr. Zelich was likely to receive a de facto life sentence on a plea to the lesser charge given its severity and his exposure."  "Thus," Zelich claims, he "did not have much to lose by going to trial."  And significantly, as he alluded to in his postconviction motion, Zelich will likely contend that he believed he had a reasonable basis to believe that even if convicted of first-degree intentional homicide after a trial, he would have a reasonable prospect of having the circuit court's other-acts ruling reversed on appeal.  He points out he was well aware that the court had twice ruled that the Shepard other-acts evidence was both irrelevant and excessively prejudicial.

11

¶22   We agree that if Zelich was advised that he could appeal the court's other-acts ruling, despite his plea, that such advice would have been wrong.  We also agree that Zelich may well have been willing to take his chances with a trial even if the wrong advice would have ultimately led to an unsuccessful appeal on the other-acts issue.  Whether such advice was actually given is an issue to be addressed at a *Machner* hearing, along with the question as to whether he did in fact rely on that advice in deciding to take a plea.   Such reliance would presumably be based upon a belief that (1) he had a reasonable chance of having a conviction on the charge of first-degree intentional homicide reversed on appeal due to the admission of the other-acts evidence and (2) with the prison exposure he faced with his plea in this case alone, and certainly if combined with a sentence from the Minnesota case, he would likely be receiving a de facto life sentence even if he pled to the lesser charge of first-degree reckless homicide.  While the court's ruling allowing the admission of the Shepard other-acts evidence may have made it significantly likely that Zelich would be found guilty at a trial of first-degree intentional homicide and subsequently be mandatorily sentenced to life imprisonment, Zelich may have believed "the respective consequences of a conviction after trial and by plea … are … similarly dire," and thus "even the smallest chance of success" of winning an appeal and securing a new trial without the admission of the other-acts evidence may have appeared "attractive" to him.  *See Lee*, 137 S. Ct. at 1966 (citation omitted).

¶23   Upon remand, the circuit court shall complete the *Machner* hearing and decide Zelich's plea withdrawal motion.  It may well be that the court concludes, after a complete *Machner* hearing, that trial counsel did not perform deficiently based upon the advice the court finds that counsel actually provided Zelich.  Or, the court may conclude that even if counsel did perform deficiently,

12

Zelich was not prejudiced because the facts the court finds indicate there is not a reasonable probability Zelich would have foregone pleading and gone to trial even if he had been properly advised by counsel. As the record now stands, however, we must conclude the court erred in precluding Zelich from putting forth his evidence to try to meet his burden on his postconviction motion.

¶24 For the sake of completeness and judicial efficiency upon remand, we clarify that on the question of the admissibility of the other-acts evidence related to Shepard's death, the circuit court did not erroneously exercise its discretion in ruling that such evidence may be admitted at trial. *See State v. Sullivan*, 216 Wis. 2d 768, 780-81 (1998) ("The applicable standard for reviewing a circuit court's admission of other acts evidence is whether the court exercised appropriate discretion."). The court ruled that the evidence was admissible for the purpose of demonstrating "the purpose, plan, modus operandi because of its similarity to the conduct attributed to the defendant" in the killing of Gerhard. This ruling was one that a reasonable judge could make. *See State v. Hunt*, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771; *Sullivan*, 216 Wis. 2d at 780-81.

¶25 The parties agree that the proper analysis related to the admissibility of the other-acts evidence is under *Sullivan*. *Sullivan* holds that in considering the admissibility of other-acts evidence, a court considers whether (1) the evidence is offered for a permissible purpose, (2) the evidence is relevant, and (3) the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Sullivan*, 216 Wis. 2d at 772-73. Because Zelich argues only the third point on appeal, despite the State's substantial briefing on all three points, Zelich has conceded the first two. *Dalka v. Wisconsin Cent., Ltd.*, 2012 WI App 22, ¶15 n.1, 339 Wis. 2d 361, 811 N.W.2d 834 ("Unrefuted arguments are deemed

admitted."). Despite this concession, we nonetheless briefly review the circuit court's ruling with regard to the first two *Sullivan* considerations.

¶26 WISCONSIN STAT. § 904.04(2) provides that

> evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The circuit court concluded that the Shepard other-acts evidence would be admissible in the trial related to Gerhard's death because it demonstrated a plan and modus operandi by Zelich. We agree.

¶27 To be admissible on the basis that the proffered evidence shows a plan, the other act and the act at issue in the case before the court must have "such a concurrence of common features that the various acts are materially to be explained as caused by a general plan of which they are the individual manifestations." *State v. Gray*, 225 Wis. 2d 39, 53, 590 N.W.2d 918 (1999) (citation omitted). "Whether there is a concurrence of common features is generally left to the sound discretion of the trial courts." *Id.* at 51 (citation omitted). Similarly, where, as here, there is significant similarity between the incident at issue in the case before the court and the other-acts incident, evidence is admissible "to prove mode or method of operation," modus operandi. *See State v. Hammer*, 2000 WI 92, ¶26, 236 Wis. 2d 686, 613 N.W.2d 629.

¶28 Here, the circumstances related to Zelich's interactions with and the deaths of Shepard and Gerhard have sufficient common features to evidence a plan and modus operandi. According to the complaint, Zelich met both Gerhard and

14

Shepard online, took each woman to a motel/hotel where they engaged in "breath play," during which a ball gag device was placed in each woman's mouth and a rope tied around her neck to restrict her breathing and choke her. This breath play caused the death of each woman, which death Zelich claimed was accidental. Zelich placed each body in a suitcase, transported it back to West Allis, eventually hiding both bodies in the trunk of his vehicle until leaving them both, still in the suitcases, at the side of the road.

¶29 We also conclude that the evidence was admissible for the additional proper purposes of showing identity, motive, intent and absence of accident. Related to identity, even though Zelich did not dispute that he was the individual who caused Gerhard's death, the identity of who killed Gerhard was still an element the State had to prove at trial, and "[i]f the State must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element." *Id.*, ¶25. In addition to admitting having killed Gerhard, Zelich also told police he killed Shepard. In light of the significant similarities in Zelich's interactions with and the deaths of Shepard and Gerhard, the Shepard evidence was relevant to identifying Zelich as the killer of Gerhard. As to motive, the State points out that Zelich appeared to maintain possession and control of both Gerhard's corpse and Shepard's corpse as "prized possessions." Procuring such possessions and doing so in the manner he did would tend to establish a motive for Zelich to kill Gerhard. And related to intent and absence of accident, Zelich's theory of defense is that he and Gerhard were "two consenting adults engaging in inherently dangerous behavior that accidentally resulted in her death." Even though Zelich caused Shepard's death after causing Gerhard's, the very similar manner in which their deaths occurred lends support to the State's

theory that Zelich intentionally killed Gerhard and tends to debunk Zelich's theory that her death was an accident.

¶30    On the second point of the *Sullivan* analysis—whether the evidence is relevant—we conclude that it is.

¶31    Evidence is relevant "if it relates to a fact or proposition that is of consequence to the determination of the action and if it has probative value." *Hammer*, 236 Wis. 2d 686, ¶30.  The Shepard other-acts evidence is relevant for establishing Zelich's intent to kill Gerhard and his identity as the killer, two facts of consequence to the determination of the charges against him, and, as suggested above, was probative of these two facts.  *See Gray*, 225 Wis. 2d at 38 ("The measure of probative value in assessing relevance is the similarity between the charged offense and the other act.").

¶32    On the third *Sullivan* point, Zelich bore the burden before the circuit court "to show that the probative value of the [Shepard] evidence is *substantially outweighed* by the risk or danger of unfair prejudice."  *See State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399 (emphasis added).  He failed to meet this burden.

¶33    Zelich argues that the probative value of the facts related to Shepard's death is limited by the fact that Shepard's death occurred "after" Gerhard's death and "14 months" after.  He claims that the probative value of the Shepard evidence has "less weight when measured against the prejudicial effect, which is substantial."  He adds:

> Both deaths … involve adults consenting to dangerous behavior that is outside mainstream views in our culture.  It would be difficult for a jury to understand these consensual but otherwise deviant behaviors and the danger that they

would find Mr. Zelich guilty based simply on the fact that two deaths occurred during these activities is high.

Zelich asserts that "the probative value of the other acts evidence in this case is outweighed by the danger for unfair prejudice."

¶34 Zelich fails to persuade. To begin, in its response brief, the State provided substantial briefing with regard to the probative value of the other-acts evidence—to show Zelich's plan to kill Gerhard, to refute his assertion Gerhard's death was an accident, and to complete the story of the investigation into Gerhard's death.[3] In his reply brief, Zelich fails to address any of that briefing or the probative value of the other-acts evidence, but instead merely says that the fact that Shepard's death occurred after Gerhard's, and fourteen months after, "limit[s]" the probative value of that evidence. We find the probative value of the Shepard evidence quite significant. *See **Sullivan***, 216 Wis. 2d at 786. As our supreme court has explained:

> Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the probative value lies in the similarity between the other act and the charged offense. The stronger the similarity between the other acts and the charged offense, the greater will be the probability that the like result was not repeated by mere chance or coincidence.

*Id.* at 786-87.

¶35 Here, the significant similarity between the evidence related to Shepard's death and that related to Gerhard's tended to show that Zelich had a

---

[3] Law enforcement initially questioned Zelich and obtained his DNA during the investigation into *Shepard's* death, leading to their investigation of him in connection with Gerhard's death.

plan to find females online, meet them in person for dangerous BDSM[4] activities, engage in such activities in a rented room, kill the female during "breath play" performed in a particular manner, and then hide the corpse but keep it in his possession. The evidence tended to show that "the like result"—the death of the female Zelich first met online—"was not repeated by mere chance or coincidence." The evidence supported the State's theory that Gerhard's death was not accidental and that Zelich lured and killed her intentionally.

¶36　For the circuit court to preclude admission of the Shepard evidence based upon the third prong of *Sullivan*, Zelich would have had to demonstrate to the court that the probative value of that evidence was not only "outweighed" by the danger of unfair prejudice, as Zelich asserts, but that it was "substantially outweighed" by such danger. *See State v. Hunt*, 2003 WI 81, ¶53, 263 Wis. 2d 1, 666 N.W.2d 771. Zelich asserts that the danger was "high" that a jury "would find Mr. Zelich guilty based simply on the fact that two deaths occurred during" "deviant" and "dangerous behavior that is outside mainstream views in our culture." While we agree there would have been at least some potential risk of this, we do not view the risk as being so high that it substantially outweighed the probative value of this evidence. As the circuit court observed, the Shepard other-acts evidence supported the State's theory that Zelich "had a homicidal purpose when he first made contact with the decedent in this case." The court did not erroneously exercise its discretion in granting the State's other-acts motion.

---

[4] BDSM is an acronym for "bondage, discipline, sadism and masochism." *State v. Bvocik*, 2010 WI App 49, ¶2 n.2, 324 Wis. 2d 352, 781 N.W.2d 719.

¶37 In sum, while we conclude the other-acts ruling was a proper exercise of discretion, the order denying the postconviction motion for plea withdrawal is reversed for the reasons set forth herein. On remand, the circuit court shall complete the *Machner* hearing and if Zelich establishes ineffective assistance of counsel, allow him to withdraw his pleas.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).